### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
FLORIAN BANGULESCU,           :
         Petitioner,          :
                              :    PRISONER CASE NO:
     v.                       :    3:04cv1834 (AWT) (DFM)
                              :
THERESA LANTZ, COMMISSIONER   :
DEP'T OF CORRECTION,          :
         Respondent.          :
------------------------------x
```

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Florian Bangulescu, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging 2001 convictions on charges of issuing a bad check, forgery in the second degree, credit card theft and possession of burglar tools. He has been deported to Romania since filing this action. For the reasons set forth below, the petition is being denied.

### I.   PROCEDURAL BACKGROUND

In February 2001, in the Connecticut Superior Court for the Judicial District of Stamford-Norwalk at Stamford, a jury heard evidence against the petitioner in two separate criminal cases that had been consolidated for trial. On April 24, 2001, in State v. Bangulescu, Docket No. CR00132158, the jury found the petitioner guilty of one count of issuing a bad check in violation of Conn. Gen. Stat. § 53a-128(a)(1), one count of forgery in the second degree by completion of a written instrument that he knew to be forged in violation of Conn. Gen. Stat. § 53a-139(a)(1), and one count of forgery in the second

degree by possession of a written instrument that he knew to be
forged in violation of Conn. Gen. Stat. § 53a-139(a)(1), and in
State v. Bangulescu, Docket No. CR00132159, the jury found the
petitioner guilty of one count of credit card theft in violation
of Conn. Gen. Stat. § 53a-128c(b), one count of forgery in the
second degree by possession of a written instrument that he knew
to be forged in violation of Connecticut General Statutes § 53a-
139(a)(1), and one count of possession of burglar tools in
violation of Connecticut General Statutes § 53a-106.  See State
v. Bangulescu, 80 Conn. App. 26, 28 n.1.  The court imposed a
total effective sentence for both cases of ten years of
imprisonment suspended after six years and followed by five years
of probation.  On October 21, 2003, the Connecticut Appellate
Court affirmed the petitioner's convictions.  See id. at 51.  On
December 30, 2003, the Connecticut Supreme Court denied the
petition for certification to appeal the decision of the
Connecticut Appellate Court.  See State v. Bangulescu, 267 Conn.
907 (2003).

## II.  **STANDARD OF REVIEW**

The federal court will entertain a petition for writ of
habeas corpus challenging a state court conviction only if the
petitioner claims that his custody violates the Constitution or
federal laws.  See 28 U.S.C. § 2254(a).  A claim that a state
conviction was obtained in violation of state law is not

cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court, or if it decides a case differently than the Supreme Court on essentially the same facts.  See Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably

applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case.  The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).  Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition.  See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## III. **DISCUSSION**

The petitioner sets forth three grounds in support of his petition.  He argues (1) that the charges on which he was prosecuted at trial were not included in the warrant for his arrest and the warrant was not signed by a judge, (2) that his arraignment proceeding was defective because the court failed to

4

ask him if he had heard the collective rights advisement and did not properly inform him of the charges against him, and (3) that the court's failure to conduct a preliminary inquiry into juror misconduct resulted in a denial of his right to a fair trial by an impartial jury.

A.    <u>Arrest Warrant</u>

On March 29, 2000, Darien Police Detective Ray Osborne executed a warrant for the petitioner's arrest.  The petitioner argues that the six offenses for which he was tried and convicted were not included in the arrest warrant and that a judge had not signed the warrant.  The petitioner challenged the legality of the arrest warrant on appeal of the judgment of conviction.  The Connecticut Appellate Court found the following facts.

> In the winter of 2000, the Darien police department began investigating the recurring fraudulent activities of the [petitioner] and another person involving Summit Bank. Pursuant to the investigation, a warrant was issued for the [petitioner's] arrest on February 2, 2000. Subsequently, the Darien police received a tip from the New York City police department, which had been investigating a similar case involving the [petitioner], that the [petitioner] might have been a patron of Mailboxes, Etc., in Norwalk.  Thereafter, on the morning of March 29, 2000, Ray Osborne, a detective with the Darien police department, confirmed that the [petitioner] frequented the store.
>
> Osborne returned to the store later that afternoon and, while sitting in a police vehicle in the parking lot, observed the [petitioner] enter the store.  As the [petitioner] left the store, he was arrested

> by Osborne pursuant to the warrant issued on
> February 2, 2000.  At that juncture, Osborne
> observed the [petitioner] remove two credit
> cards from his pocket and throw them into a
> nearby trash can.   Retrieving the cards,
> Osborne noted that one was a Telebank debit
> card and the other a Capitol [sic] One Visa
> card. Neither was in the [petitioner's] name.
> Additionally,   the   police   searched   the
> [petitioner's]  automobile  incidental  to  his
> arrest.  The search yielded various tools used
> in picking locks.

Banqulescu, 80 Conn. App. at 30.  The  State of Connecticut

initiated two separate criminal cases against the petitioner by

filing charges in two separate informations.  See id. at 28 n.1.

The charges in the first information arose from the petitioner's

arrest pursuant to the arrest warrant executed by Detective

Osborne.  The charges in the second information arose from the

petitioner's warrantless arrest based on criminal conduct

observed by and evidence seized by Detective Osborne at the time

of the petitioner's arrest pursuant to the arrest warrant.  See

id. at 34-35.

    The Appellate Court found the following additional facts

relevant to the claim of a defective arrest warrant.

> The [petitioner] was arrested by Osborne
> pursuant to an arrest warrant signed on
> February 2, 2000, by Kavenewsky, J.   The
> warrant was supported by a three page
> affidavit from Osborne that included a
> statement that he had obtained a photograph of
> the [petitioner] and had shown it to John T.
> Mickle, the manager of Summit Bank.   The
> affidavit further stated that Mickle had
> confirmed that the person in the photograph
> was the [petitioner].  At trial, on February

6

1, 2001, on cross-examination by the
[petitioner], Mickle testified that he had
never met the [petitioner], nor had any law
enforcement officer shown him a photograph of
the [petitioner].

On July 31, 2000, the [petitioner] filed a
motion to dismiss the charges for, inter alia,
lack of probable cause to issue the arrest
warrant.    The [petitioner] filed another
motion to dismiss, dated January 29, 2001, on
the ground that he had been arrested without
an arrest warrant.   In neither instance did
the [petitioner] include with his motion a
statement of the supporting factual and legal
basis.  On appeal, however, the [petitioner]
claims that his arrest was illegal because
there was no arrest warrant and because the
charges do not appear in the warrant
application,  and,  he  now  raises  as  an
additional basis for dismissal that the
affidavit in support of his arrest contained
materially false allegations.  The trial court
denied both motions without written memoranda.
Subsequently, on May 6, 2002, the court issued
an articulation regarding the July 31, 2000
motion.

As to the motion to dismiss for lack of
probable cause, the court observed that the
[petitioner] had failed to provide either a
factual or legal basis in support of the
motion as required by Practice Book § 41-6.
Additionally, as noted by the court in its
articulation of its denial of the motion,
because the [petitioner] was arrested pursuant
to an arrest warrant, he was not entitled to
file a motion to dismiss claiming
insufficiency of the evidence pursuant to
Practice Book § 41-8(5).  See Practice Book
§ 41-9.

Bangulescu, 80 Conn. App. at 30-31.

The petitioner contends that the arrest warrant was

deficient and violated his Fourth Amendment rights.  The Fourth

7

Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The Connecticut Appellate Court determined that the warrant for the petitioner's arrest was supported by a three page affidavit, that the warrant and information comprised two sides of the same document, and that the information clearly stated the charges against the petitioner, i.e., one count of Issuing a Bad Check in violation of Connecticut General Statutes § 53a-128, two counts of Forgery in the Third Degree in violation of Connecticut General Statutes § 53a-140, one count of Larceny in the Third Degree in violation of Conn. Gen. Stat. § 53a-124 and one count of Criminal Attempt at Larceny in the Fifth Degree in violation of Connecticut General Statutes § 53a-125a, and was signed by a Superior Court Judge on February 2, 2000.[1]  The court concluded

_____

[1]  The Appellate Court noted that the larceny counts included in the original information were excluded from the substituted information filed by the prosecutor.  The record reflects that before trial, on January 5, 2001, the State filed a substitute information charging the petitioner with one count of issuing a bad check in violation of Conn. Gen. Stat. § 53a-128(a)(1), one count of forgery in the second degree by completion of a written instrument that he knew to be forged in violation of Conn. Gen. Stat. § 53a-139(a)(1) and one count of

that the warrant, which included the information, was complete and complied with the Connecticut Practice Book rule governing warrants.

The findings as to the information contained in the arrest warrant are findings of fact.  As such, under 28 U.S.C. § 2254(e)(1), they are entitled to a presumption of correctness. The petitioner has failed to provide evidence to rebut the presumption.  Furthermore, the Fourth Amendment does not require that an arrest warrant be signed by a judge or that it include the charges against the subject of the warrant.  Accordingly, the petitioner has not demonstrated that Connecticut Appellate Court's conclusion that his arrest was valid due to the fact that the arrest warrant and information included the charges against him and the signature of a state court judge was contrary to, or an unreasonable application of, clearly established Supreme Court law.  The petition is being denied as to this ground.

The petitioner also claims that the charges in the second information on which he was convicted, i.e., forgery, credit card theft and possession of burglary tools, were not included in a warrant.  This claim was not raised by the petitioner in the appeal of his conviction.

A prerequisite to habeas corpus relief under 28 U.S.C.

_____

forgery in the second degree by possession of a written instrument that he knew to be forged in violation of Conn. Gen. Stat. § 53a-139(a)(1).

9

§ 2254 is the exhaustion of available state remedies.  <u>See</u>
<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); 28 U.S.C.
§ 2254(b)(1)(A).  The exhaustion requirement "is designed to give
the state courts a full and fair opportunity to resolve federal
constitutional claims before those claims are presented to the
federal courts."  <u>O'Sullivan</u>, 526 U.S. at 845.  The Second
Circuit requires the district court to conduct a two-part
inquiry.  First, a petitioner must present "the essential factual
and legal premises of his federal constitutional claim to the
highest state court capable of reviewing it."  <u>Cotto v. Herbert</u>,
331 F.3d 217, 237 (2d Cir. 2003) (citation omitted).  Otherwise,
the state courts will not have had an opportunity to correct the
alleged errors.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 845.  Second, he
must have utilized all available means to secure appellate review
of his claims.  He cannot wait until appellate remedies no longer
are available and argue that the claim is exhausted.  <u>See</u>
<u>Galdamez v. Keane</u>, 394 F.3d 68, 73-74 (2d Cir.), <u>cert. denied</u>,
544 U.S. 1025 (2005).

    Under Section 2254(b)(2), a district court has jurisdiction
to deny a habeas petition on the merits even when some (or all)
of the petitioner's claims are unexhausted.  <u>See Pratt v.
Greiner</u>, 306 F.3d 1190, 1197 (2d Cir. 2002).  The court concludes
that the claim regarding the charges in the second information is
without merit.

The record reflects that on March 29, 2000, Detective Osborne executed a warrantless arrest of the petitioner on charges of credit card theft, possession of burglary tools and forgery.  The charges arose from Detective Osborne's observation of criminal conduct by the petitioner and seizure of evidence incident to the petitioner's arrest pursuant to the warrant described above.  It is not disputed that the Constitution permits an officer to arrest an individual without a warrant if there is probable cause to believe that the individual has committed or is committing a crime.  See Virginia v. Moore, 128 S. Ct. 1598, 1607 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution"); Adams v. Williams, 407 U.S. 143, 148-149 (1972) ("Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'") (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

During the execution of the warrant for the petitioner's arrest on March 29, 2000, Detective Osborne observed the petitioner take a credit card and a debit card, neither of which were in his name, from his pants pocket and throw them in a trash

can.  Detective Osborne retrieved the cards and then seized lock-
picking tools after searching the petitioner's car incident to
his arrest.  <u>See</u> <u>Banqulescu</u>, 80 Conn. App. at 29.  The prosecutor
then filed an information charging the petitioner with credit
card theft, forgery and possession of burglary tools.  On March
30, 2000, at the petitioner's arraignment on the charges in that
information, the court found probable cause for the warrantless
arrest.  (<u>See</u> Resp't's Mem. (Doc. No. 14, App. H), Transcript of
3/30/00 at 1.)  The court concludes that the fact that the
charges in the second information were not included in an arrest
warrant was not contrary to or an unreasonable application of
Supreme Court law.  The petition is being denied as to this
ground.

     B.   <u>Defective Arraignment</u>

     The petitioner argues that at his individual arraignment,
the trial court did not advise him of his constitutional rights
and failed to inform him of the charges against him in violation
of the Fifth and Sixth Amendments to the United States
Constitution.  This claim was raised by the petitioner on direct
appeal of his conviction.  The Connecticut Appellate Court found
the following facts relevant to this issue.

> The transcript reflects that on March 30,
> 2000, at the commencement of court, the court
> collectively advised all court attendees of
> their rights and, later in the day,
> collectively informed all the detainees of
> their rights while they were waiting in the

12

> courtroom to be arraigned.  We therefore infer
> that the [petitioner] was present at a
> collective advisement.  Subsequently, the
> [petitioner] was individually arraigned at
> which time he was represented by a public
> defender.  During the arraignment, the court
> did not ask the [petitioner] whether he had
> heard and understood the collective rights
> advisement.  Instead, the state immediately
> presented the charges against the
> [petitioner].  The state indicated that the
> [petitioner] had three charges pending: (1) a
> warrant for forgery and attempt to commit
> larceny by issuing a bad check; (2) a
> warrantless arrest for possession of stolen
> credit cards, forgery and possession of
> burglar tools; and (3) a warrantless arrest
> for being a fugitive from New York on a felony
> forgery and larceny charge.

Bangulescu, 80 Conn. App. at 34-35.

The Fifth Amendment to the United States Constitution provides in relevant part: "No person shall be ... compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law...."  U.S. Const. amend. V.  It is applicable to state criminal proceedings by virtue of the Fourteenth Amendment.  See Malloy v. Hogan, 378 U.S. 1, 6 (1964).  In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Court defined custodial interrogation as "questioning

initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom of action
in any significant way." Id. The Court stated that prior to
questioning an individual during a custodial interrogation, law
enforcement officers must inform the individual

> that he has the right to remain silent, that
> anything he says can be used against him in a
> court of law, that he has the right to the
> presence of an attorney, and that if he cannot
> afford an attorney one will be appointed for
> him prior to any questioning if he so desires.

Id. at 479.

The Connecticut Appellate Court found that a transcript of
the commencement of court proceedings held on March 30, 2000,
revealed that a judge had advised the petitioner and other
detainees awaiting arraignment of their constitutional rights in
compliance with Connecticut Practice Book § 37-3.[2]  The

---

[2]  Connecticut Practice Book § 37-3 provides:
The judicial authority shall personally, at
the opening of the court session, in open
court, advise the defendant, or the
defendants . . . either individually or
collectively of the following:

(1) That the defendant is not obligated to
say anything and that anything the defendant
says may be used against him or her;

(2) That the defendant is entitled to the
services of an attorney;

(3) If the defendant is unable to pay for
one, what the procedures are through which
the services of an attorney will be provided
for him or her; and

petitioner was individually arraigned later that same day.  The transcript of petitioner's individual arraignment, however, revealed that the trial judge had not asked the petitioner whether he had understood the collective advisement of rights given to him earlier that day as required by Connecticut Practice Book § 37-4.[3]  The court concluded that although the judge had violated Connecticut Practice Book § 37-4, the petitioner had not shown that he had been prejudiced by this failure.

The petitioner has pointed to no Supreme Court precedent treating an arraignment as the equivalent of a custodial interrogation and requiring a judge to individually inquire as to whether a defendant understood the rights he was advised of at a collective arraignment, and the court has found none.  The court concludes that there is no clearly established federal law requiring a state trial court to collectively or individually advise a defendant of his Fifth Amendment rights at arraignment. Thus, the Connecticut Appellate Court's determination that the petitioner was not prejudiced by the trial judge's failure to

_____

> (4) That the defendant will not be questioned unless he or she consents, that the defendant may consult with an attorney before being questioned and that the defendant may have an attorney present during any questioning.

[3]  Connecticut Practice Book § 37-4 provides that "[i]f the judicial authority shall have collectively informed all defendants of their rights at the opening of court, it shall preface the individual arraignment of each by asking whether he or she heard and understood the collective statement."

15

ascertain whether he understood his rights at his individual arraignment is not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  See Lurie v. Wittner, 228 F.3d 113, 133 (2d Cir. 2000) ("Because there is no Supreme Court rule that mandates the admission of the type of evidence in dispute here, it cannot be said that the state-court decision is contrary to clearly established Federal law as determined by the Supreme Court.") (citation and internal quotation marks omitted).  The petition is being denied as to this ground.

The Sixth Amendment to the Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."  The rights encompassed in the Sixth Amendment are "part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States."  Faretta v. California, 422 U.S. 806, 818 (1975).  The petitioner contends that the trial court failed to inform him of the charges against him at arraignment.

The Connecticut Appellate Court determined that the

16

Connecticut Practice Book § 37-7[4] did not specify that the judge
is the only person who could advise the petitioner of the charges
against him.  In this case, the prosecutor read the charges
against the petitioner at the arraignment.  Thus, the court
concluded that the court had not violated Connecticut Practice
Book § 37-7.  The Sixth Amendment does not require that a judge
advise a defendant of the charges against him.  In addition, the
record reflects that the judge informed the petitioner of the
charges against him on at least one other occasion after
petitioner's arraignment, but before trial.  (See Resp't's Mem.,
App. H, Transcript of 11/7/00 at 1-7.)

The Connecticut Appellate Court's conclusion that the
petitioner's arraignment, at which the charges against him were
read by the prosecutor, did not violate Connecticut Practice Book
§ 37-7 was not contrary to, or an unreasonable application of,
clearly established Supreme Court law.  The petition is being
denied as to this ground.

C.   Juror Misconduct

The petitioner argues that there was a violation of the
Sixth Amendment because the jury was not impartial.  He claims
that at one point during the second day of trial, one of the

---

[4]   Connecticut Practice Book § 37-7 provides that "[u]pon
being read the charges against him or her contained in the
information or complaint, the defendant shall enter a plea of not
guilty, guilty, or nolo contendere."

17

jurors approached the prosecutor and handed him a magazine article about the founder of Mailboxes, Etc.  The petitioner contends that Mailboxes, Etc. was closely connected to the case presented by the prosecutor.  The petitioner argues that the trial judge failed to adequately inquire into this alleged conduct by the juror.

The Connecticut Appellate Court found the following facts relevant to this issue.

> The trial commenced on February 1, 2001.  The next afternoon, on Friday, February 2, as the court recessed for the day, a member of the jury panel approached the prosecutor in the courtroom and handed him a Fortune magazine article regarding the chief executive officer of Mailboxes, Etc.  According to the prosecutor, the juror presented the article in the presence of the [petitioner] and stated, 'Oh, I have an article on your favorite business.'  The prosecutor claimed that he did not respond, but that he did show the article to the [petitioner].  The following Monday, the prosecutor notified the court of the incident and requested that the article be made a court exhibit. The court complied.  The court then asked the [petitioner] and his standby counsel whether they had anything to say regarding the matter.  Both indicated that they did not.

Bangulescu, 80 Conn. App. at 47 (footnote omitted).

The Sixth Amendment guarantees a defendant the right to a trial by an impartial jury.  See Duncan v. Louisiana, 391 U.S. 145, 159 (1968).  A trial judge has broad discretion in determining the type of inquiry to be undertaken regarding the effects of extra-record information.  See Marshall v. U.S., 360

18

U.S. 310, 312 (1959) (citing <u>Holt v. U.S.</u>, 218 U.S. 245, 251

(1910).  The action to be taken with respect to jurors reading

articles concerning the trial in "each case must turn on its

special facts."  <u>Id.</u>

The Connecticut Appellate Court found that the trial judge

had conducted an inquiry that included listening to the Assistant

State's Attorney's description of the conduct of the juror,

marking the magazine article as a court exhibit and questioning

the defendant and his stand-by counsel as to whether they had

anything further to say regarding the juror's conduct.  The

Appellate Court observed that neither the defendant nor his

stand-by counsel had any objections concerning the conduct of the

juror and noted that although the article mentioned Mailboxes,

Etc., it otherwise had no connection to the criminal cases

against the petitioner.  The Appellate Court concluded that the

inquiry conducted by the trial judge did not constitute an abuse

of discretion and "thus, a constitutional violation did not

clearly exist."  <u>Banqulescu</u>, 80 Conn. App. at 51.

The article contained no information regarding the substance

of the petitioner's case.  Rather, it merely documented an

interview with the founder of Mailboxes, Etc.  <u>See</u>, <u>e.g.</u>, <u>U.S. v.</u>

<u>Lord</u>, 565 F.2d 831, 838 (2d Cir. 1977) ("If the . . . article

contains no information beyond the evidence in the case, or if

the information is clearly innocuous . . ., further inquiry may

not be necessary.")  The Appellate Court's conclusion that the trial judge did not abuse his discretion, under the circumstances presented, by concluding that no further inquiry was required to ensure the petitioner was afforded a fair trial by an impartial jury was not contrary to or an unreasonable application of Supreme Court law.  The petition is being denied as to this ground.

**IV.   <u>CONCLUSION</u>**

The Petition for a Writ of Habeas Corpus (Doc. No. 1) is hereby DENIED.  Because the petitioner has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.

The Clerk shall close this case.

Dated this 23rd day of September, 2009 at Hartford, Connecticut.

_____/s/ AWT_____
Alvin W. Thompson
United States District Judge

20